## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| ESKRIDGE (E&A), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:13-cv-00600 |
| | ) | |
| MULVANNYG2 ARCHITECTURE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

### MULVANNYG2 ARCHITECTURE CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES FROM ESKRIDGE (E&A), LLC

MULVANNYG2 ARCHITECTURE CORPORATION ("Mulvanny"), by counsel and pursuant to Federal Rule of Civil Procedure 37 and Local Civil Rule 37, files this Brief in Support of its Motion to Compel Discovery Responses from the Plaintiff, Eskridge (E&A), LLC ("Eskridge"). In support of its Motion, Mulvanny states as follows:

### I.    INTRODUCTION

Eskridge is currently withholding from production, either in whole or in part, approximately 1,400 responsive documents on the basis of the attorney-client privilege and/or the work product doctrine. However, Mulvanny has good cause to believe that most, if not all, of these documents are not privileged and should have been produced long ago. Moreover, Eskridge has continually failed to provide an adequate and accurate privilege log, and its counsel have taken positions with regard to the privilege descriptions of the withheld documents that are not by the facts or the law. In many instances, Eskridge has also waived any privilege that might apply. Accordingly, the Court should Order Eskridge to produce all improperly withheld

documents immediately.  Alternatively, Mulvanny requests that this Court conduct an *in camera* review of representative documents (approximately 180, see **Exhibit A**, attached) included on the current iteration of Eskridge's privilege log that appear to be both directly relevant to this litigation and not shielded from discovery by either the attorney-client privilege or the work product doctrine, and use that review to inform, in part, a decision on documents that should be produced.

## II.    NATURE OF THECASE

In the fall of 2009, Eskridge engaged Mulvanny to provide design services in connection with the development of "Parcel B" of the Mosiac District project in Merrifield.  Parcel B was to be designed for a Target store on the fourth floor as the anchor tenant, parking on part of level one, and on levels two and three, and retail on the exterior of level one.  Target required Eskridge to deliver the completed building shell on or before February 1, 2012.  Eskridge hired L.F. Jennings to construct the building for a guaranteed maximum price of about $36 million. Eskridge turned over the completed building shell to Target in February 2012 as agreed.  Target opened its store in October 2012.  Eskridge claims that it paid L. F. Jennings nearly $3 million for various change orders adding scope and cost to the job because of deficiencies in Mulvanny's professional services, and it wants Mulvanny to pay for those change orders.  Whether these many change orders each arise from a compensable error or deficiency in Mulvanny's services and, if so, how Eskridge has been damaged, if at all, are hotly contested issues in this action.

## III.    PROCEDURAL BACKGROUND

On September 12, 2013, Mulvanny served its First Requests for Production of Documents to Eskridge.  On September 18, 2013, the parties filed a Rule 26(f) Joint Proposed Discovery Plan ("the Discovery Plan"), which required each party asserting a privilege or

privileges as to any information requested in discovery to specify the legal basis for such assertion and identify the facts giving rise to any alleged claim of privilege.  The Discovery Plan also requires the party asserting the privilege to "identify any information, document, or other material for which any privilege is asserted by means of production of a Privilege Log sufficient to be able to establish the applicability of the privilege asserted."  The parties agreed to exchange Privilege Logs on or before November 1, 2013.  On September 23, the Court adopted these portions of the Discovery Plan into the Pretrial Order.  See Docket Entry No. #9.

On September 30, 2013, Eskridge filed its Objections to Mulvanny's First Request for Production of Documents, attached as **Exhibit B**.  Eskridge objected to requests that it claimed called for "the production of documents or information that is protected from disclosure by the attorney-client privilege or the attorney work-product doctrine."  On October 14, 2012, Eskridge provided documents in response to Mulvanny's requests, all in searchable electronic form as agreed by the parties in the Discovery Plan.  The production consisted of approximately 45GB of data in various formats.[1]

### A.      The Original Privilege Log

On November 1, 2013, Eskridge provided a privilege log (hereinafter referred to as "the Original Privilege Log") listing documents responsive to Mulvanny's document requests but withheld from production based on either the attorney client privilege or the work product doctrine.  The Original Privilege Log is attached hereto as **Exhibit C**.  The Original Privilege Log identified 2,347 "documents"[2] over which Eskridge claimed privilege.  The majority of these documents were identified as emails or email chains and/or attachments to emails.

---

[1] 45GB translates to very roughly at least five hundred standard four-drawer filing cabinets of information if everything were printed out on standard 8 ½ x 11 paper.

[2] Because the parties agreed to produce all documents electronically but not necessarily in native form, in many instances a single "DocID" is assigned to a collection of records that might otherwise be considered separate

On November 15, 2013, counsel for Mulvanny (hereinafter "we") sent a letter to counsel for Eskridge (attached as **Exhibit D**) identifying preliminary challenges to the privilege claims asserted over the first 1,501 documents listed on the Original Privilege Log.  The letter informed Eskridge that although we had not completed our review, we already had serious concerns about the accuracy of the log and the application of the privileges asserted.  On November 20, 2013, we sent a follow-up email, attaching a more complete assessment and challenges to a majority of the 2,347 claims of privilege included on the Original Privilege Log.  See email attached hereto as **Exhibit E**.  On November 25, Eskridge's counsel wrote that he was "working on a response." See **Exhibit F**, attached.  On November 27, 2011, we sent an updated and reorganized list of the various challenges Mulvanny asserted to Eskridge's privilege claims.  The updated challenges list is attached hereto as **Exhibit G**.

The majority of Mulvanny's challenges were to emails and email chains that Eskridge withheld based on the attorney/client privilege but that did not involve an attorney per the information provided in the Original Privilege Log.  *See, e.g.* Ex. C, Original Privilege Log p. 3 (Priv00041, Priv00042, Priv00046, Priv00049, and Priv00056).  Mulvanny also challenged several emails on which an attorney was copied as one of several recipients.  In most cases, the attorney was Durham Boney, a real estate transactional lawyer who often acted as a business advisor rather than a legal advisor.  Eskridge asserted privilege over several hundred emails on which Mr. Boney was only copied, and to which he did not appear to have ever responded.  *See, e.g.,* Ex. C, Original Privilege Log p. 3 (Priv00057-Priv00059), p. 7 (Priv00126), p. 10 (Priv00183), p. 21 (Priv00348), and p. 28 (Priv00448).  Additionally, Mulvanny challenged emails sent to outside consultants as this either waived any privilege or rendered the

---

documents.  One common example is a chain of emails where one "document" might be several emails replying to one another.  In many cases, one "document" on the privilege log is actually several separate and distinct communications for purposes of privilege analysis.

communication not privileged in the first instance.  *See, e.g.,* Ex. C, Original Privilege Log, p. 66 (Priv01237 – sent to outside consultant Edward Wagaman), p. 88 (Priv01895 – sent to outside consultant Thomas Harding), p. 99 (Priv02164 – sent to outside consultants Lisa Goodwin and Thomas Harding).

Mulvanny also challenged Eskridge's decision to withhold hundreds of email attachments that were not privileged merely because they were attached to an email that Eskridge claimed was an attorney/client privileged communication.  *See, e.g.,* Ex. C, Original Privilege Log at p. 31(Priv00516-Priv00517– construction drawings), p. 47 (Priv00801-Target Substantial Completion Form), p. 57 (Priv01011- chart attached to email), and p. 64 (Priv01211- Architectural Drawing).

Eskridge's counsel advised that he would likely have a response to Mulvanny's challenges "during the week of December 9."

### B.      The Amended Privilege Log

Finally, on December 4, 2013, counsel for Eskridge provided a First Amended Privilege Log, attached hereto as **Exhibit H**.  Eskridge withdrew the privilege claim to 463 documents, nearly all of which were attachments to emails.  Eskridge also re-wrote portions of the log to describe documents that would now be produced with the allegedly privileged portions redacted.

On December 5, 2013, we spoke by phone to Eskridge's counsel to discuss Eskridge's privilege assertions.  During this call, we expressed concern over the large number of documents over which Eskridge was still claiming privilege without explanation or apparent justification. However, we ultimately agreed to further study the just-received Amended Privilege Log as well as the recently produced (redacted) documents, and then arrange another phone call to discuss the matters in more detail.

We spent considerable time and resources studying the First Amended Privilege Log and the documents produced simultaneously therewith.  Our review revealed the following:

> **i.      Eskridge's Original Privilege Log included at least 266 documents that were already produced in October and that were in no way privileged.**  Of the 463 documents that Eskridge included on its Original Privilege Log but then subsequently produced on December 4th, at least 266 had already been produced by Eskridge in October of 2013 as part of its general Rule 34 production.

> **ii.      Many of the documents that Eskridge produced with redactions on December 4th were previously produced in October without redactions.**  Moreover, side-by-side comparisons of the redacted and unredacted (or "clean") versions of such documents revealed (a) that the descriptions in the First Amended Privilege Log did not accurately describe the information redacted; and (b) that the information redacted was not privileged.  Likewise, Eskridge redacted entire email chains on the basis of the attorney/client privilege.  However, a review of one of those same email chains already produced by Eskridge without redactions revealed that only four email communications within the chain of 13 emails actually included an attorney.  Even on those rare occasions, the attorney was only a "cc" on communications between Eskridge employees unquestionably *not* sent for the purpose of soliciting legal advice. *C.f.* email chain attached hereto as **Exhibit I** (E0110081) (unredacted version) with email chain attached hereto as **Exhibit J** (Priv01379) (redacted version).  In the "clean" version, you can see that counsel redacted several emails *with an outside geotechnical consultant* discussing the need for an updated proposal.  Eskridge's outside counsel, Durham Boney, is "cc-ed" on a few, but there should never have been a notion that these emails included any privileged communications and the log description is misleading, at best.

**iii.** **Some of the documents listed on the First Amended Privilege Log that Eskridge was still completely withholding on the basis of privilege had already been produced by Eskridge in October.** These documents were also not accurately described on the First Amended Privilege Log, and they were certainly not privileged. For example, the First Amended Privilege log identified "an email chain sent for the purpose of seeking legal advice from counsel" as withheld on the basis of the attorney/client privilege. *See* Ex. H, First Amended Privilege Log p. 26 (Priv00819). However, a review of that same email chain – already produced months earlier– reveals that the email discussion was between Eskridge employees concerning arrangements with Dominion Virginia Power to bring electricity to the building and contains <u>no mention</u> of seeking specific legal advice or input from counsel on the subject of the discussion. *C.f.* email attached hereto as **Exhibit K** (E0053316) with Ex. H, First Amended Privilege Log p. 26 (Priv00819). The lone mention of an attorney is a routine suggestion that someone send DVP's proposal to Durham Boney, the outside attorney.

**iv.** **The First Amended Privilege Log still contained many of the documents challenged by Mulvanny on the Original Privilege Log.** These included, but were not limited to: 1) emails on which no attorney was included; 2) emails on which an attorney was merely copied as one of many recipients; 3) email attachments that were not privileged; and 4) emails sent to outside consultants thus waiving the attorney-client privilege.

On December 6, 2013, counsel for Mulvanny sent an email explaining both newly discovered and continuing, unresolved problems with the Amended Privilege Log and stating that we would be filing a motion to compel production of all documents listed on the Amended Privilege Log. This email is attached hereto as **Exhibit L.**

C.     <u>The Second Amended Privilege Log</u>

On December 10, 2013, counsel for Eskridge sent a <u>Second</u> Amended Privilege Log along with an email explaining its efforts to resolve Mulvanny's continuing concerns about privilege assertions.  The Second Amended Privilege Log and the email are attached hereto as **Exhibit M**.  In conjunction with the Second Amended Privilege Log, Eskridge produced an additional 93 unredacted documents, as well 58 documents with allegedly privileged portions redacted.

The Second Amended Privilege Log and corresponding document production only raised more concerns.

**i.     Emails produced on December 10 that were previously withheld by Eskridge as privileged were not accurately described on the Original and First Amended Privilege Logs.**  Eskridge produced many emails that it originally withheld entirely or that it previously produced with redactions.  Therefore, we were able to compare newly produced documents with their corresponding privilege descriptions provided by Eskridge on the Original Privilege Log and the Amended Privilege Log.  This comparison revealed the following examples:

• An email that was described on the First Amended Privilege Log as "discussing legal advice from outside counsel" (see Ex. H, First Amended Privilege Log p. 35 (Priv01175) is actually an email "To Do" list Eskridge employee Tom Kiler sent to himself.  See email attached hereto as **Exhibit N** (Priv01175).  Page two of 13 contains the one mention of an attorney in the entire document, but it is not discussing legal advice received from that attorney.  Instead, it is a notation that the attorney was to "verify" a single detail in the closing requirements, yet Eskridge's counsel used this one mention as the basis for withholding the

*entire* document.  .  Thus, the log was grossly inaccurate and the assertion of privilege plainly wrong.

- An email that was described on the First Amended Privilege Log as "containing legal advice regarding Parcel B description" (see Ex. H., First Amended Privilege Log p. 32 (Priv01055-01056) is actually an email from attorney Durham Boney to Eskridge attaching the legal description of the property for recordation purposes, which is a public record.[3] In the body of the email, Boney simply wrote:  "Here is the legal description for Parcel B."  This one sentence is not legal advice, and should never have been the basis for withholding the entire email chain.  See email attached hereto as **Exhibit O** (Priv01055-01056).

- An email that was described on the First Amended Privilege Log as an "email from outside counsel providing legal advice regarding Mosaic supplemental declarations" (see Ex. H., First Amended Privilege Log p. 34 (Priv01127)) was actually an email from an attorney to an Eskridge employee attaching pages from the supplemental declarations, which was then forwarded to another Eskridge employee.  There is *no content* in the body of either email, and the supplemental declarations were not themselves privileged documents.  See email attached hereto as **Exhibit P** (Priv01127).

- The First Amended Privilege Log described an email as "containing legal advice from outside counsel."  (See Ex. H., First Amended Privilege Log p. 44 (Priv01600).  The email was sent from an attorney to an Eskridge employee; however, it is attaching a non-privileged document, and the email itself has *no content*.  See email attached hereto as **Exhibit Q** (Priv01600-Priv01601).

---

[3] Eskridge originally also withheld the legal description itself that was attached to this email, describing the attachment on the Original Privilege Log as "a memorandum containing legal advice."  It was one of the 463 documents that Eskridge agreed to produce on December 4th after Mulvanny questioned it.  Nevertheless, the description of this document provided on the Original Privilege Log was completely inaccurate.

- An email described on the Amended Privilege Log as "discussing legal advice" (see Ex. H., First Amended Privilege Log p. 56 (Priv02031) merely states: "Durham [the attorney] is okay with it."  See email attached hereto as **Exhibit R** (Priv02031).

The above are only a few examples of the many obvious inaccuracies in the privilege descriptions of documents originally withheld by Eskridge as privileged that were produced only after Mulvanny twice challenged Eskridge's privilege log.

  **ii.**  **The Second Amended Privilege Log contained inaccurate privilege descriptions of redacted documents, and the redactions were not privileged communications.**  Once again, we discovered that several of the redacted documents produced with the Second Amended Privilege Log on December 10 were already produced by Eskridge as part of the general Rule 34 document production provided in October.[4]  After conducting a side-by-side comparison of these documents and reviewing the associated descriptions contained in the Second Amended Privilege Log, it was clear that the privilege descriptions on the log did not accurately reflect what was being withheld, and what was being withheld is not privileged. Specifically, we uncovered the following:

- Priv00032 (*See* Ex. M, Second Amended Privilege Log p. 1) - This is Weekly Status Report # 30, one of dozens prepared by Eskridge field personnel to update other Eskridge personnel about progress of construction.  The Second Amended Privilege Log describes the extensive redactions as "legal advice and request for legal advice."  The corresponding unredacted document reveals that the redactions could not possibly be thought privileged attorney-client communications.  *C.f.* document attached hereto as **Exhibit S** (Priv00032-redacted version) with document attached hereto as **Exhibit T** (E0010951-

---

[4] Note:  Only with the redacted version in hand was it possible to search for an unredacted version of the same document in the general production.  Without the redacted versions as a guide, we would never have located the unredacted version and learned just how inaccurate the log entries were

unredacted version).  Just using the first page as an example, the list of work activity performed elsewhere on other parcels is clearly not legal advice or a request for legal advice.  Admittedly, this particular document is of little value – redacted or clean – with respect to the issues in dispute.  However, the decision to assert a privilege to an innocuous document – one that so plainly is not privileged – that causes Mulvanny to question *every* claim of privilege.

- Priv00040 (*See* Ex. M, Second Amended Privilege Log p. 1) -The Second Amended Privilege Log identified the redaction as an "email string containing discussions in anticipation of litigation regarding subcontract work performed at Target."  This email was also in the general production unredacted.  A side-by-side comparison of the redacted and unredacted versions reveals that the redacted portions are merely communications between Eskridge employees that are <u>not</u> covered by the work product privilege.  *C.f.* email chain attached hereto as **Exhibit U** (E011219) (unredacted version) with email chain attached hereto as **Exhibit V** (Priv00040) (redacted version).  This series of emails concerns a floor to ceiling exterior glass wall in the "food court" area of the Target store near the Starbucks and Pizza Hut kiosks.  The redacted emails are not to a lawyer, from a lawyer, "cc-ed" to a lawyer, or discussing litigation against anyone; rather, they are Eskridge personnel expressing their own views on contractual responsibility, if any, for a possible change in the design.

- Priv00856 (*See* Ex. M, Second Amended Privilege log p. 27)- The redaction portions are described in the Second Amended Privilege Log as an "email providing information to in-house counsel for the purpose of obtaining legal advice for Parcel B construction."  The actual email reveals that the redacted portions include an email from an LF Jennings employee to two Eskridge employees attaching a non-privileged document.  This is then forwarded on to Eskridge's in-house counsel.  However, there is nothing about the body of

the email that would render it privileged, and the email from a third party LF Jennings employee is certainly not privileged and should not have been redacted.  *C.f.* email chain attached hereto as **Exhibit W** (E0011259) (unredacted version) with email chain attached hereto as **Exhibit X** (Priv00856) (redacted version).

       **iii.**         **The Second Amended Privilege Log still contained many of the documents challenged by Mulvanny on the Original and First Amended Privilege Logs.**
These included, but were not limited to: 1) emails on which no attorney was included; 2) emails on which an attorney was merely copied as one of many recipients; 3) email attachments that were not privileged; and 4) emails sent to outside consultants thus waiving the attorney-client privilege.

      On Thursday, December 12, Mulvanny's counsel sent a very detailed email to Eskridge's counsel, noting the continued issues with the Second Amended Privilege Log and attaching some examples of the above-described emails.  *See* email attached hereto as **Exhibit Y** (without attachments, to avoid duplication of exhibits).  In an attempt to resolve the ongoing problem with Eskridge's privilege assertions without involving the Court, Mulvanny's counsel asked for the following: 1) an understanding of how the privileged documents were identified on the original log, the First Amended Privilege Log, and the Second Amended Privilege Log, who wrote the privilege descriptions, and an explanation of why the descriptions were so grossly inaccurate; 2) why it was that so many non-privileged documents were withheld and only produced after Mulvanny twice challenged the privilege assertions; 3) an explanation and understanding of how Eskridge made the decision to produce some documents, while still withholding others; 4) an agreement as to what types of communications the attorney client and work product privileges applies; and 5) a review by Eskridge's counsel of the entire Second Amended Privilege Log and

the corresponding  documents, with the expectation that Eskridge would withdraw the privilege from several more documents.

On the afternoon of Friday, December 13, counsel for both parties had another telephone discussion regarding Eskridge's privilege claims.  During this phone call, counsel for Eskridge stated that "contract" attorneys prepared the Original and First Amended Privilege Logs.  It was suggested that this explained why the descriptions were inaccurate and why so many non-privileged documents were originally withheld.  Without providing an explanation as to why the Second Amended Privilege Log also included many of the same grossly inaccurate privilege descriptions – according to Eskridge's attorneys, the Second Amended Privilege Log was prepared by them with only minimal help from contract attorneys – Eskridge's counsel agreed to review the Second Amended Privilege Log in its entirety and to make determinations about whether the privileges assertions contained therein were proper.  They promised yet another amended log would be provided to Mulvanny within a week.

### D.    The Third Amended Privilege Log

On December 20, 2013, Eskridge sent a fourth version of its privilege log to Mulvanny ("the Third Amended Privilege Log"), attached hereto as **Exhibit Z**.  Review of the Third Amended Privilege Log revealed more inconsistencies and raised still more questions and concerns.

**i.    Eskridge's Second Amended Privilege Logs included at least 83 documents that were already disclosed to Mulvanny in October and that were in no way privileged.**  Along with the Third Amended Privilege Log, Eskridge produced an additional 453 documents in full.  Of the documents produced in full, at least 83 were previously produced to Mulvanny as part of its Rule 34 document production in October.  In other words, Eskridge

amended the privilege log *three times* before removing 83 documents that were previously produced and that were not privileged.

>    **ii.**    **The Third Amended Privilege Log contained inaccurate privilege descriptions of redacted documents, and the redactions are not privileged communications.**

With the Third Amended Privilege Log, Eskridge produced 89 documents with redactions, at least three of which were previously produced unredacted so that counsel for Mulvanny was again able to conduct a comparison of the redacted and unredacted versions.  This comparison *once again* revealed that Eskridge was still redacting communications that were not privileged, and the descriptions of the redactions contained in the Third Amended Privilege Log were *once again* inaccurate:

> • Priv00063 (*See* Ex. Z, Third Amended Privilege Log p. 2) – The Third Amended Privilege Log identifies the redaction as "email text containing request for legal advice from Durham Boney [the attorney] regarding Target contract language."  However, the email is discussing the terms of a contract, and the sentence redacted by Mulvanny's attorneys states: "(I'm almost positive it's 14 days [not business days] but wanted to confirm with Durham." Stating intent to verifying the *content* of a contract is not a request for legal advice, whether you call the lawyer or call someone else with a copy.  *C.f.* email chain attached hereto as **Exhibit AA** (E0037952) (unredacted version) with email chain attached hereto as **Exhibit BB** (Priv00063) (redacted version).

> • Priv00817 (*See* Ex. Z, Third Amended Privilege Log p. 21) -The Third Amended Privilege Log describes the redaction as "discussing request for legal advice from Durham Boney [the attorney] concerning Mosaic agreements."  The corresponding redacted sentence states: "Please send to Durham as well and let me know if you can have comments back

by COB Monday."  This is NOT a protected communication and should never have been redacted.  *C.f.* email chain attached hereto as **Exhibit CC** (E0115891) (unredacted version) with email chain attached hereto as **Exhibit DD** (Priv000817) (redacted version).

- Priv02237 (*See* Ex. Z, Third Amended Privilege Log p. 43) – The Third Amended Privilege Log describes the redaction as an "email chain and email text containing and discussing information regarding Target survey provided by EDENs [Eskridge] consultants to Durham Boney for the purpose of obtaining legal advice regarding Target survey."  Incredibly, this same email was simultaneously produced to us unredacted with Third Amended Privilege Log.  Comparing the two documents, the redacted text states:  "I tried Durham [the attorney] but did not get him.  I left him a VM." and "Call Durham to review together".  The form language at the bottom of a consultant's email signature was also inexplicably redacted.  None of these redactions are appropriate – these are NOT protected communications – nor are they what they are described to be on the Third Amended Privilege Log.  *C.f.* email chain attached hereto as **Exhibit EE** (Priv02235) (unredacted version) with email chain attached hereto as **Exhibit FF** (Priv02237) (redacted version).

The above redactions are unquestionably improper – the communications are not privileged, and the redacted communications are inaccurately described on the Third Amended Privilege Log.

**iii.**     **The majority of the redacted emails that were produced by Eskridge contain block redactions.**  Eskridge redacted the to/from/cc/date/subject information, making it impossible to determine whether the redacted email is to and from the people listed on the Third Amended Privilege Log or about the subject claimed.  Many of the redactions are also several

pages long – an indication that more than one email was redacted – yet the log identifies only one email.

> **iv.     The Third Amended Privilege Log still contains many of the types of emails challenged by Mulvanny on the Original, First, and Second Amended Privilege Logs.**  Eskridge continues to assert the attorney-client and/or the work product privilege over email communications that do not include an attorney, or that include an attorney only as one of many copied recipients.  Based upon the privilege descriptions provided for these emails and the fact that Eskridge's counsel have consistently shown a lack of understanding of when the attorney-client privilege and work product privileges apply, Mulvanny has reason to doubt that the redacted and withheld documents are as they are described on the log.

> **v.      The Third Amended Privilege Log includes approximately 190 new assertions of work product privilege.**  Eskridge *added* a claim of work product privilege to 190 documents listed on its Third Amended Privilege Log that had thrice previously been described as protected only by the attorney-client privilege.  The Discovery Plan required Eskridge to provide Mulvanny with a complete and accurate log by November 1, 2013.  Eskridge had ample opportunity to assert the work product privilege, and yet failed to do so.  The work product assertions are untimely, and therefore Eskridge waived any claim of work product over these 190 log entries.

## II.     ARGUMENT

As can be seen by the many examples provided in this brief, Eskridge has demonstrated a complete lack of understanding of the applicable law governing when the attorney-client and work product privileges apply to a particular document or communication.  Despite Mulvanny's request that Eskridge conduct a detailed analysis of its privilege log and produce complete copies

of all non-privileged documents, Eskridge has consistently redacted or withheld communications that clearly do not meet the standard for either privilege.

A.     **Legal Standard for the "Attorney/Client Privilege"**

As set forth by the Fourth Circuit in *U.S. v. Jones*, the "classic test" for the determining whether the attorney-client privilege applies is as follows:

> The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

696 F.2d 1069, 1072 (4th Cir. 1982).  The purpose of the privilege is "to promote full and frank communication between attorneys and their clients and to serve the public interest in the administration of justice."  *Scott & Stringfellow, LLC v. AIG Comm. Equip. Fin.*, Civ. No. 3:10cv825-HEH-DWD, 2011 WL 1827900, at * 2 (E.D. Va. May 12, 2011) (citing *Nellis v. Air Line Pilots Ass'n*, 144 F.R.D. 68 (E.D. Va. 1992).  In general, the privilege is not favored by federal courts because it "impedes the full and free discovery of the truth and is in derogation of the public's right to every man's evidence."  *Id.* (citing *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir. 1984)).

Accordingly, in order for the attorney-client privilege to apply to an email communication, it must have been sent "for the purpose of procuring or providing legal advice." *SNC-Lavalin Am., Inc. v. Alliant Techsystems, Inc.,* 7:10cv00540, 2011 WL 4716225, at *1 (W.D. Va. Oct. 6, 2011).  Similarly, a document is not privileged merely because it is attached to an email sent to an attorney – the attorney-client privilege "does not attach to a document merely

because a client delivers it to his attorney." *Id.* (citing *Va. Elec. & Power Co. v. Westmoreland–LG & E Partners*, 259 Va. 319, 526 S.E.2d 750, 755 (2000).  Moreover, in order for the privilege to apply to an email communication sent to an attorney, "the attorney receiving the communication must be acting as an attorney and not simply as a business advisor."  *Henson v. Wyeth Laboratories, Inc*., 118 F.R.D. 585, 587 (W.D. Va. 1987).  A voluntary disclosure of the communication to a third party waives the privilege.  *Jones,* 696 F.2d at 1072.  Thus, if a third party is copied on an email sent to an attorney or if an email from an attorney is forwarded to a third party, the privilege is waived.  In the corporate context, in order to avoid waiving the privilege, the communication may be shared only with those employees that have a "need to know" the information communicated.  *ePlus Inc. v. Lawson Software,* 280 F.R.D. 247, 252-53 (E.D. Va. 2012) (citing *Deel v. Bank of America, N.A.,* 227 F.R.D. 456, 460 (W.D.Va.2005).

**B.      Legal Standard for the "Work-Product Doctrine"**

Rule 26(b)(3) of the Federal Rules of Civil Procedure, commonly referred to as the "work-product doctrine," provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  The policy behind the work-product doctrine is to protect the privacy between a lawyer and his or her client in the development of legal theories, opinions and strategies.  *See Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 983-84 (4th Cir. 1992); *see also Yorktowne Shopping Ctr., LLC v. Nat'l Sur. Corp.*, 1:10cv1333, 2011 WL 1842720 (E.D. Va. May 16, 2011).  Accordingly, for a document to receive work-product protection, it must be "(1) prepared by, or under the direction of, an attorney or representative, and (2) in anticipation of litigation." *Yorktowne Shopping Ctr.*, 2011 WL 1842720 at *1 (citing *E.I. DuPont De*

*Nemours and Co. v. Kolon Indus., Inc.* No. 3:09cv58, 2010 WL 1489966, at *3 (E.D. Va. April 13, 2010)).

The party seeking protection under the work-product doctrine bears the burden of establishing, as to each document for which it claims entitlement to the protection, that it meets the requisite elements. *Portsmouth Redevelopment & Hous. Auth. v. BMI Apts. Assocs.*, 155 F.R.D. 136, 138-39 (E.D. Va. 1994) (citing *Sandberg v. Virginia Bankshares, Inc*., 979 F.2d 332 (4th Cir. 1992)). Courts have made clear that assertions of privileges such as the work-product protection are disfavored, as they "shield evidence from the truth-seeking process." *RLI Ins. Co. v. Conseco, Inc*., 477 F. Supp. 2d 741, 748 (E.D. Va. 2007) (citing *Herbert v. Lando*, 441 U.S. 153, 175 (1979)). Accordingly any assertion of the work-product protection must be "narrowly and strictly construed … so that the [protection] is 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *Id.* (citing *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984)).

### C. Eskridge has failed to meet its burden to justify its attorney-client privilege and work product claims.

As clearly shown by the examples cited herein, Eskridge has improperly asserted the attorney-client privilege over communications that "do not explicitly ask for legal advice, opinions, or oversight," or that otherwise suggest that the purpose of the communication is to provide "an opinion on law, legal services, or ... assistance in some legal context." *Scott & Stringfellow*, 2011 WL 1827900, at *3. It appears as though Eskridge has asserted a blanket privilege over <u>any</u> email in which a lawyer was included, even if the lawyer was only one of several recipients of the email and regardless of the content of the communication. Perhaps even more troublesome, Eskridge claims attorney-client privilege over non-privileged communications merely because a lawyer is mentioned in the communication. For example,

Eskridge claims privilege over a statement by one of its employees that he was unable to reach the attorney and had to leave him a voicemail.  *See* Ex. DD and Ex. EE ("I tried Durham [the attorney] but did not get him.  I left him a VM.").

Eskridge also claims as work product emails and documents that do not contain the development of legal theories, opinions and strategies, nor were they made at the direction of counsel in anticipation of litigation.  Rather, based upon their timing and content, many of the communications and documents appear to have been during the normal course of Eskridge's business and are thus not protected by the work product doctrine.  See *RLI Ins. Co.*, 477 F. Supp. 2d at 746-47 (distinguishing between documents created "in anticipation of litigation" and documents created "in the ordinary course of business," and holding that "an attorney's work is protected only when it is created 'because of' the prospect of litigation.")

Most disturbing is the way in which Eskridge describes the redacted and withheld communications on the many iterations of its privilege log.  As can be seen from the many examples cited herein, the privilege descriptions do not even come close to describing the actual communication being withheld.  In most instances, of course, Mulvanny cannot review "clean" versions of documents withheld or redacted in order to determine for ourselves if the document is privileged.  However, in some instances – many cited here – recent production of a redacted document has allowed us to find the very same document unredacted in the general Rule 34 production.[5]  These rare glimpses behind the veil reveal a disturbing  pattern of obfuscation.  In nearly every instance where, armed with a redacted document, we have been able to match redacted and "clean" versions of the same document and compare the two, the description on the

---

[5] We have alerted Eskridge's counsel repeatedly to our fortuitous discovery of clean versions of supposedly privileged (and now redacted) documents numerous times over the past month.  Not one explanation has been forthcoming, and not one request has been made to "claw back" the clean version pursuant to the stipulated protective order in this action.

log(s) of the nature of the communications is plainly wrong and the communication is obviously not privileged.  The many examples we have uncovered give us substantial reason to doubt the privilege assertions over *all* of the withheld documents listed on the Third Amended Privilege Log, even those that include an attorney.

For example, on January 8, after weeks of work to resolve privilege issues, Eskridge produced a redacted version an email identified on the fourth iteration of its privilege log as "Priv00056."  The redacted version of this email is attached hereto as **Exhibit GG** (Priv00056). Eskridge logged the reason for the redaction as follows:  "REDACTION: Email chain requesting legal advice from outside counsel regarding consequences of construction delay."  *See* Ex. Z, Third Amended Privilege Log p. 2 (PRIV00056).  With the redacted version now in hand, we located in Eskridge's Rule 34 production a nearly identical "clean" version of the same email containing most of the now redacted language.  See unredacted version attached as **Exhibit HH** (E0012100).  Although we were unable to locate the Bill Caldwell reply at 10:13:26 (redacted on PRIV0056), we did find in the general production the Craig Friedson email at 9:16:37 without any redaction.  Now it is possible to examine at least part of the redacted content.  The email discussion concerns the need to activate or energize the power to the Target space in the building in order to remain on schedule.  The redacted Crag Friedson email at 9:16 is not addressed to a lawyer, does not ask for a lawyers' assistance and does not concern legal matters.  Rather, he merely asks his superiors for *their* advice on how to let Target know that its actions may cause a delay to the project.

Eskridge seeks over $500,000 as damages in this case for the cost of paying the contractor (J.F. Jennings) to accelerate its work in order to meet Target's deadline for building turnover.  Eskridge claims that deficient professional services by Mulvanny are the sole cause of

the delays that required acceleration, a charge Mulvanny vigorously denies.  After weeks of review and (supposedly) careful study and re-study of every document on the log, a decision to redact obviously non-privileged information directly relevant to the single biggest component of damages – another cause of delay – is troubling.

In its *Third* Amended Privilege Log – the fourth attempt to submit an accurate log – Eskridge still lists countless emails and email chains on which an attorney was cc'd on an email, or was involved in a part of an email thread that, as far as we can tell based on the descriptions, had nothing to do with seeking or providing legal advice.  Based upon review of similar previously withheld emails, and because of many known inaccurate log listings, there is good cause to suspect that Eskridge has improperly asserted the privilege over these communications.

Additionally, the Third Amended Privilege Log continues to lack information regarding many of the withheld documents sufficient for Mulvanny to properly assess the privilege claim. There are several documents identified as attachments to emails to counsel sent "for the purpose of obtaining legal advice," but it is not clear that the attachments are actually privileged.  For example, Eskridge claims the attorney-client and work product privilege over "notes regarding constructive change directives" that were created in 2010, well before this litigation was filed. *See* Ex. Z, Third Amended Privilege Log p. 17 (Priv000525).  There is no information on the Third Amended Privilege Log about who wrote the notes, or for what purpose.  Similarly, Eskridge asserts the attorney-client and work product privileges over charts that were created in 1999 and 2000 and sent to the attorney in 2012.  *See* Ex. Z, Third Amended Privilege Log p. 12 (Priv00474-Priv00476).  There is no evidence that any of these documents attached to emails to Eskridge's attorneys were "made for the purpose of facilitating the rendition of legal services." *In re Grand Jury Proceedings Under Seal*, 947 F.2d 1188, 1191 (4th Cir.1996).

### III.    CONCLUSION

As the party claiming privilege, Eskridge is required to provide a log that adequately describes the grounds for protection "with a degree of specificity that allows [Mulvanny] to assess the assertion of the privilege against the applicable tests and to challenge any claim thought to be wanting." *Rambus, Inc. v. Infineon Tech. AG,* 220 F.R.D. 264, 272 (E.D. Va. 2004).  Because Mulvanny does not have the benefit of reviewing the withheld documents, we must rely on the privilege descriptions contained in the log in order to determine whether Eskridge has satisfied its burden.  *See id.*  Mulvanny has offered Eskridge ample opportunity to correct its privilege log and produce all non-privileged documents, allowing it to amend its privilege log <u>four times</u> over the last six weeks.  Yet every privilege log provided by Eskridge, including the most recent Third Amended Privilege Log, contains improperly redacted and withheld documents that do not meet the requisite legal standard.   Additionally, every privilege log, including the most recent Third Amended Privilege Log, contains privilege descriptions that have proven to be grossly inaccurate.  The continuing inaccuracies and inadequacies of Eskridge's privilege logs, including the most recent version, are sufficient to warrant a finding that Eskridge has waived all asserted privileges and certainly warrants the Court scrutinizing the documents *in camera* to determine what is and is not privileged.  *Id.* at 274.

For the foregoing reasons, MulvannyG2 Architecture Corporation respectfully requests that this Honorable Court order the Plaintiff, Eskridge (E&A), LLC, to produce <u>all</u> documents identified on the Third Amended Privilege Log in their complete and unredacted form.  Alternatively, Mulvanny asks the Court to conduct an *in camera* review of select documents found in the chart attached hereto as Exhibit A in order to determine whether Eskridge has

properly asserted privilege over these documents.  Mulvanny has good cause to believe that the documents listed in Exhibit A are relevant to this litigation and are not subject to either the attorney client or work product privileges.  Mulvanny reserves the right to assess the need for further discovery at Eskridge's expense based on improperly withholding non-privileged documents, for modification of the Discovery Plan, and for extension of time to complete discovery.

Pursuant to Local Civil Rule 37(E), counsel for Mulvanny hereby certifies that it has in good faith met and conferred with counsel for Eskridge multiple times in an attempt to resolve this matter without Court involvement, to no avail.


**MULVANNYG2 ARCHITECTURE CORPORATION**

Dated January 10, 2014.                   By: /s/   James W. Walker

Stephan F. Andrews, VSB #23756
James W. Walker, VSB #29257
Casaundra M. Maimone, VSB #79667
VANDEVENTER BLACK LLP
707 East Main Street, Suite 1700
Richmond, Virginia 23219
Telephone: (804) 237-8800
Facsimile: (804) 237-8801
E-mail: sandrews@vanblk.com
E-mail: jwalker@vanblk.com
E-mail: cmaimone@vanblk.com

*Counsel for Defendant MulvannyG2 Architecture Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2014, I sent the foregoing by electronic mail, pursuant to agreement of counsel, to the following:

Geoffrey T. Hervey, VSB #42295
Bregman, Berbert, Schwartz & Gilday, LLC
7315 Wisconsin Avenue, Suite 800 West
Bethesda, Maryland 20814
Telephone: (301) 656-2707
Facsimile: (301) 961-6525
E-mail: Ghervey@bregmanlaw.com
*Counsel for Plaintiff Eskridge (E&A), LLC*

/s/ James W. Walker

4823-2529-5895, v.  1