# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| ESKRIDGE (E&A), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:13-cv-00600 |
| | ) | |
| MULVANNYG2 ARCHITECTURE | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | | |

## MULVANNYG2 ARCHITECTURE CORPORATION'S REBUTTAL BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY RESPONSES FROM ESKRIDGE (E&A), LLC

MULVANNYG2 ARCHITECTURE CORPORATION ("Mulvanny"), by counsel and pursuant to Federal Rule of Civil Procedure 37 and Local Civil Rules 7 and 37, files this Rebuttal Brief in Support of its Motion to Compel Discovery Responses from the Plaintiff, Eskridge (E&A), LLC's ("Eskridge").

Eskridge argues that the remedy of waiver of all claims to privilege is "exceedingly harsh" and should only be imposed in cases involving "unjustified delay, inexcusable conduct, or bad faith." Eskridge's Resp. Br. at 1. Eskridge is correct; waiver by conduct should be rare and reserved for the exceptional case. Eskridge asserts that it cannot be found to have engaged in conduct warranting waiver because it has made an effort to resolve this dispute by addressing what it characterizes as either 1) "errors" in its privilege logs; or 2) "good faith differences of opinion regarding the applicability of the attorney-client privilege and work product doctrine. " *Id.* Yet Eskridge has never provided any explanation of why it *deliberately* chose to redact so many non-privileged communications, or why it continued to withhold so many non-privileged

documents, even after amending its privilege log *three times* over the course of several weeks. Mulvanny's opening brief on this issue details multiple occasions where documents about which privilege was not even debatable were withheld. The most recent production provided by Eskridge in response to the opening brief reveals still more documents that should not have been on the first log, let alone the second, third or fourth. To be clear, the slow drip of non-privileged documents has not yet uncovered information warranting a request to reopen discovery. However, it has revealed plainly inaccurate descriptions and a determined effort to withhold documents of marginal relevance that are clearly not privileged. This raises serious questions about what remains on the privilege log.

With each new version of its privilege log, Eskridge released another batch of documents challenged by Mulvanny. However, it did so without providing any explanation of why these non-privileged documents were withheld in the first place. Moreover, after Mulvanny pointed out that several of the documents on the privilege log had already been produced, Eskridge never sought to "claw back" any of these documents despite a clear provision in the parties' Stipulated Protective Order that would have allowed it to do so.[1] Rather, Eskridge apparently concedes that these documents were not subject to privilege protection and should never have been on its privilege log. In fact, only with regard to its most recent production of an additional 106 documents in response to this motion did Eskridge expressly state that it was not waiving its claim of privilege.[2]

Eskridge's unjustified failure to provide a privilege log that meets the requirements of Rule 26(b)(5) has caused Mulvanny to expend significant time and resources. Eskridge argues that it has made a good-faith attempt to resolve this issue, and to that end counsel have indeed

---

[1] *See* Docket Entry No. 12, ¶ 10.
[2] The Parties agreed that the production of these documents would not constitute a subject-matter privilege waiver.

talked on the phone, met in person and communicated by email frequently over the past weeks.
Yet even after updating its privilege log four times and undertaking "an in-depth analysis" of its privilege claims, the descriptions in Eskridge's Third Amended Privilege Log are demonstrably misleading and unreliable. Therefore, Eskridge's conduct is of the type could warrant a finding of waiver as to all its privilege claims.

If the Court determines that a waiver is unwarranted in these circumstances, Mulvanny requests that this Court 1) order production of all emails listed on Eskridge's Third Amended Privilege Log (Ex. Z to Mulvanny's Mot. to Compel) for which the privilege claim is based solely upon the inclusion of real-estate attorney Durham Boney as a recipient; and 2) an *in camera* review of the documents that remain on its Challenge Log, attached hereto as Exhibit II, to determine whether the privilege claim as to each document is proper.

## I. Eskridge's Actions Warrant a Finding of Waiver.

As required by Fed. Rule Civ. Pr. 26(b)(5):

> when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – *and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.*

(emphasis added). This Rule required Eskridge to provide a privilege log that accurately described the nature of the documents it withheld from production such that Mulvanny could assess its claims of privilege. Instead, Eskridge produced privilege log after privilege log containing inaccurate and misleading descriptions of the documents and information it withheld under claims of the attorney/client and work product privileges.

Eskridge contends that it undertook "an in-depth privilege analysis" with respect to each and every document listed on its Third Amended Privilege Log. Eskridge's Resp. Br. at 5. Yet, as shown by the examples cited in Mulvanny's Brief in Support of its Motion to Compel (Part III.D.ii), even after conducting this "in-depth analysis," Eskridge purposefully redacted non-privileged, commonplace correspondence[3] simply because an attorney's name was mentioned. *See* Mulvanny's Br. in Support of Mot. to Compel at 14, Ex. EE, Ex. FF. Eskridge then described these redactions as text "containing and discussing information . . . provided to [the attorney] for the purpose of obtaining legal advice . . . ." *Id.* at 14, Ex. Z. No matter how liberally one construes the applicability of the attorney-client privilege, this redacted communication is not discussing information to be sent to the attorney for the purpose of procuring an opinion on law or legal services. *See U.S. v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982). This is not a matter of a "good-faith difference of opinion" as to the applicability of the privilege; rather, it is a blatant and deliberate misrepresentation of the content of the document. But for the fact that we were able to find unredacted versions of a few of the same documents in the general production, we would never have discovered just how inaccurate the descriptions were or how broadly the privilege was being construed.

Eskridge attempts to persuade the Court that it is Mulvanny, and not Eskridge, that has engaged in disruptive conduct. Eskridge laments that Mulvanny placed it in a "frustrating position" by reviewing the documents Eskridge agreed to release in order to determine whether they were accurately described on the privilege log. Eskridge's Resp. Br. at 15. Essentially, according to Eskridge's counsel, they were wary of releasing the non-privileged documents for fear of being caught with their hand in the cookie jar.

---

[3] The redacted text states: "I tried [the attorney] but did not get him. I left a VM." *See* Mulvanny's Br. in Support of Mot. to Compel, Part III.D.ii and Exhibits EE and FF.

Yet it was Eskridge's own conduct that caused Mulvanny's undersigned counsel (hereinafter "we" and "us") to become increasingly skeptical of the released documents and each new log. It was apparent from the face of Eskridge's Original Privilege Log that several of its claims of privilege were inappropriate and subject to challenge. However, it was only after we recognized a redacted email as one that Eskridge had previously produced in full that we began to search for similar occurrences. Eskridge's First and Second Amended Privilege Logs contained many of the documents we previously challenged, and with each new log, we were faced with the decision of whether to continue to challenge these documents. The process of reviewing the privilege logs and the documents released by Eskridge in a piecemeal fashion was time-consuming and burdensome. Nevertheless, it was a necessary task to ensure that Mulvanny had access to any and all non-privileged documents containing relevant evidence or information that could lead to the discovery of admissible evidence. Knowing that Eskridge inaccurately described redacted documents on its privilege log gave us reason to doubt the accuracy of the remainder of the log. As such, after Eskridge produced additional documents, we compared them with their corresponding log descriptions to determine whether our concerns were well-founded. Unfortunately, we quickly discovered that they were. Thus, it was Mulvanny, and not Eskridge, who was placed in a "frustrating position." Mulvanny was tasked with assessing Eskridge's hundreds of claims of privilege by way of a privilege log with a track record of flagrant inaccuracies.

**II. This court should compel the production of emails from Eskridge employees to real-estate attorney Durham Boney.**

In direct response to this motion, on January 20, 2014, Eskridge produced 78 of the documents listed on Mulvanny's Challenge Log attached as Exhibit A to the Brief in Support of Mulvanny's Motion to Compel, hereinafter "the Challenge Log". The majority of the documents

produced on January 20th were email communications in which real-estate transactional lawyer Durham Boney was courtesy-copied, but was not a direct sender or recipient. The emails are generally described on Eskridge's Third Amended Privilege Log as "requesting legal advice," "discussing information for the purpose of attaining legal advice," or "for use in obtaining legal advice." *See, e.g.,* Ex. Z to Mulvanny's Mot. to Compel, at Priv00165, Priv00166, Priv00167, Priv00348, Priv00356, Priv00671-Priv00672. Based upon the privilege descriptions, these emails appeared to be relevant to issues in this litigation. Therefore, Mulvanny's Motion to Compel sought an *in camera* review of these emails (among others) to determine whether Eskridge properly asserted privilege over an email communication in which Mr. Boney was only courtesy-copied. Mulvanny asked this Court to use this *in camera* review of these documents to inform a decision on what other documents Eskridge should be required to produce. *See* Mulvanny's Br. in Support of Mot. to Compel at 2.

In an attempt to narrow the scope of the issues before the Court, Eskridge produced the majority of these emails, thus alleviating the need for the Court to review and evaluate them *in camera*. However, we were able to conduct our own review of these communications, which confirmed our suspicions that these emails are *not* subject to the attorney-client privilege.

Eskridge argues that Mr. Boney is a real-estate transactional attorney who "practices law and gives legal advice." Eskridge's Resp. Br. at 19. Mulvanny does not dispute this point. However, in order for communications between Eskridge employees and Mr. Boney to be covered by the privilege, they must have been made "for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." Eskridge's Resp. Br. at 18 (citing *Hawkins v. Stables,* 148 F.3d 379, 383 (4th Cir. 1998).

Based upon our review, it is clear that Eskridge has consistently asserted an improper attorney-client privilege claim over nearly every single communication involving Durham Boney. It is clear by the content and context of the communications that Mr. Boney's advice is neither solicited nor received. The emails are not directed to Mr. Boney, they are not sent for the purpose of providing him with information so that he can render legal advice with regard to that information, and he does not reply. Rather, these emails are correspondence among Eskridge employees on which Mr. Boney is merely copied, presumably in order to keep him apprised of certain project developments. By way of example, see the emails attached hereto as Exhibit JJ. The email communications in question are discussing business matters, not legal matters, and are not privileged. *See U.S. v. Singhal,* 800 F. Supp.2d 1, 9 (D.D.C. 2011) ("Communications made to or by attorneys for business or financial purposes are not privileged.") "The fact that an attorney is copied on these emails does not make them about 'legal matters.'" *Brainware, Inc. v. Scan-Optics, Ltd.*, Civil Action No. 3:11cv7552012, WL 2872812, at *3 (E.D.Va. 2012). An Eskridge employees' decision to include Mr. Boney as a courtesy-copy recipient to these emails merely reflects the business relationship between Eskridge and Mr. Boney, and does not show that Eskridge was seeking legal advice from Mr. Boney. *Singhal,* 800 F.Supp.2d at 10.

Eskridge contends that it conducted an "in-depth privilege analysis" of these emails in order to "distinguish between legal versus non-legal advice." Eskridge's Resp. Br. at 5. However, as apparent by the documents produced to Mulvanny in response to this Motion, even after conducting this analysis, Eskridge improperly withheld communications which do not contain legal advice, requests for legal advice, or other such protected communications with an attorney. Rather, Eskridge appears to have applied a blanket privilege over several emails on which Durham Boney was included merely because he was part of the project team, and not

because his advice was sought or rendered. In light of this finding, Mulvanny requests that this Court compel Eskridge to produce all email communications in which Durham Boney is merely courtesy-copied or in which he is a recipient to an email among Eskridge employees.

### III. Mulvanny requests an *in camera* review of the remaining documents on its Challenge Log.

In addition to producing 78 of the emails on Mulvanny's Challenge Log, Eskridge also produced an additional 20 documents with redactions, and amended the redactions on 7 previously redacted documents to address the concerns raised by Mulvanny with regard to block redactions of email chains.

Mulvanny has reviewed Exhibit A to Eskridge's Responsive Brief to this motion, in which Eskridge provides what it terms its "good faith efforts to resolve discovery dispute" as to each challenged document that it continues to redact or withhold completely on the basis of privilege. In response to this Motion, Eskridge has finally provided adequate information with regard to the majority of the documents listed on Mulvanny's challenge list sufficient for it to evaluate the privilege claims. In light of the new information provided by Eskridge in Exhibit A to its responsive brief, Mulvanny has narrowed its challenges to 18 emails (some of which may be duplicates), 10 pages of redacted notes made by Eskridge Planning and Development Manager Geoff Sharpe, and 29 pages of redacted notes made by Eskridge Vice President Tom Kiler. Mulvanny's updated Challenge List is attached hereto as Exhibit II.

The challenged emails fall into one of two categories: 1) emails among Eskridge employees on which real-estate transactional attorney Durham Boney is courtesy-copied; or 2) emails among Eskridge employees on which in-house counsel Grace Burnside is courtesy-copied. As argued *supra* Part II, the email correspondence on which Mr. Boney is copied is not

privileged. Additionally, emails on which Eskridge's in-house counsel is courtesy-copied may not be subject to the privilege.

Generally, communications between employees of the same entity relayed to corporate counsel for the purpose of seeking legal advice are entitled to the attorney client privilege. *Owens-Corning Fiberglas Corp. v. Watson,* 243 Va. 128, 141, 413 S.E.2d 630, 638 (1992). However, the same standards apply to communications with corporate counsel – the communication must be made for the purpose of "securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding." *Scott and Stringfellow, LLC. V. AIG Comm. Equip. Fin., Inc.*, Civil No. 3:10cv825–HEH–DWD, 2011 WL1827900, at * 3 (E.D.Va. 2011). Where corporate counsel is merely privy to the communications, if the communication does not "make reference to any particular legal issue," or if "the purpose of the communication was not the solicitation or provision of legal advice on any specified legal issue," the privilege does not attach to that communication. *Id.*

Based upon the privilege descriptions contained in Eskridge's Third Amended Privilege Log, as well as the content of the remainder of the email chains, Mulvanny has a good faith reason to believe that the emails contained in Exhibit II on which in-house counsel is courtesy-copied are not privileged and should be produced. In order to resolve this issue, Mulvanny requests an *in camera* review of these emails.

With respect to the redacted handwritten notes, we continue to believe that the privilege descriptions are inaccurate and that no privilege applies to these notes. This is especially true in light of our review of the handwritten notes that Eskridge agreed to produce in response to this Motion. To resolve this issue, Mulvanny requests that the Court review the notes *in camera* in order to determine whether the asserted privilege applies to the notes.

## IV. Conclusion

For the foregoing reasons, MulvannyG2 Architecture Corporation respectfully requests that this Honorable Court order the Plaintiff, Eskridge (E&A), LLC, to produce all documents identified on the Third Amended Privilege Log in their complete and unredacted form.

Alternatively, Mulvanny asks the Court to 1) order the production of all emails listed on the Third Amended Privilege Log on which real-estate transactional attorney Durham Boney was courtesy-copied or was a recipient of correspondence among Eskridge employees, and 2) conduct an *in camera* review of the documents found in the chart attached hereto as Exhibit II in order to determine whether Eskridge has properly asserted privilege over these documents. Mulvanny has demonstrated good cause to believe that the documents listed in Exhibit II are relevant to this litigation and are not subject to either the attorney client or work product privileges.

**MULVANNYG2 ARCHITECTURE CORPORATION**

Dated January 24, 2014.    By: /s/   James W. Walker

Stephan F. Andrews, VSB #23756
James W. Walker, VSB #29257
Casaundra M. Maimone, VSB #79667
VANDEVENTER BLACK LLP
707 East Main Street, Suite 1700
Richmond, Virginia 23219
Telephone: (804) 237-8800
Facsimile: (804) 237-8801
E-mail: sandrews@vanblk.com
E-mail: jwalker@vanblk.com
E-mail: cmaimone@vanblk.com

*Counsel for Defendant MulvannyG2 Architecture Corporation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2014, I sent the foregoing by electronic mail, pursuant to agreement of counsel, to the following:

Geoffrey T. Hervey, VSB #42295
Bregman, Berbert, Schwartz & Gilday, LLC
7315 Wisconsin Avenue, Suite 800 West
Bethesda, Maryland 20814
Telephone: (301) 656-2707
Facsimile: (301) 961-6525
E-mail: Ghervey@bregmanlaw.com
*Counsel for Plaintiff Eskridge (E&A), LLC*

/s/ James W. Walker

4813-0432-6168, v. 2